UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ACE AMERICAN INSURANCE COMPANY,**

   **Plaintiff,**

v.

**ZURICH AMERICAN INSURANCE COMPANY, ET AL.,**

   **Defendants.**

Case No. 2:21-cv-1127
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth Preston Deavers

## OPINION AND ORDER

This matter is before the Court on Plaintiff ACE American Insurance Company's ("ACE") Motion for Summary Judgment (ECF No. 34), Defendants Zurich American Insurance Company ("Zurich") and Discover Property and Casualty Company's ("Discover") Cross-Motion for Summary Judgment (ECF No. 39), and Discover's Individual Cross-Motion for Summary Judgment (ECF No. 38). The parties have also filed a Joint Motion to Vacate Settlement Conference and Trial Dates. (ECF No. 48.) For the following reasons, the Court **GRANTS** Defendants Zurich and Discover's Cross-Motion for Summary Judgment, **DENIES** ACE's Motion for Summary Judgment, **DENIES as moot** Discover's Individual Cross-Motion for Summary Judgment, and **DENIES as moot** the Joint Motion to Vacate Settlement Conference and Trial Dates.

    I.  **BACKGROUND**

This is an equitable contribution action in which the plaintiff, ACE, asks the Court to compel the defendants, Discover and Zurich, to reimburse ACE for the cost of defending the insured, Safelite Group, Inc. ("Safelite") from a civil action. Safelite tendered the underlying civil action to ACE for coverage, pursuant to their liability insurance policy, and ACE fulfilled its

1

contractual obligation to defend Safelite by paying Safelite's defense costs. For several years, per Safelite's request, ACE alone defended Safelite. Nearly four years after Safelite tendered the defense to ACE, Safelite asked Discover and Zurich, who also issued liability insurance policies to Safelite, to defend because their policy coverages were triggered by the underlying lawsuit. The parties agreed that they would jointly cover Safelite's defense costs going forward, but Discover and Zurich declined to reimburse ACE for the costs incurred for the years in which ACE solely defended Safelite. ACE then sued Discover and Zurich for equitable contribution to compel them to reimburse a share of the pre-tender defense costs. It is this suit that sits before the Court, and the parties do not dispute the material facts.

    **A. The Underlying Litigation.**

On August 18, 2015, Richard Campfield and Ultra Bond, Inc. (collectively "Campfield") filed a lawsuit against Safelite entitled *Richard Campfield, et al. v. Safelite Group, Inc. et al.*, in the United States District Court for the Southern District of Ohio, Case No. 2:15-cv-2733. (Stipulation of Facts, ECF No. 33, PageID 162.) Campfield, a competitor to Safelite who develops, manufactures, and sells products designed to repair windshield cracks greater than six inches, alleged that Safelite violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), by "falsely stat[ing] that windshield cracks longer than six inches cannot be repaired and require that the windshield be replaced or, conversely, that only windshield cracks up to six inches (or the size of a dollar bill) can be safely repaired." (Campfield Compl., ECF No. 33-21, PageID 736.) Campfield alleged that, over the course of several years, Safelite made numerous false statements and misrepresentations disputing and rejecting the safety of repairing cracks longer than six inches, and that these statements hurt his business. (*Id.* at PageID 692, 699, 703, 706-07, 716-17, 738.)

After nearly six years of litigation, on March 31, 2021, the district court entered summary judgment in Safelite's favor on Campfield's claims. (Stipulation of Facts, ECF No. 33, PageID

162; *see also Campfield v. Safelite Grp., Inc.*, 2021 U.S. Dist. LEXIS 62070 (S.D. Ohio 2021).) After disposing of a counterclaim that Safelite had filed against Campfield, the district court entered a final judgment in Safelite's favor on Campfield's claims. (Stipulation of Facts, ECF No. 33, PageID 162; *see also Campfield v. Safelite Grp.*, 2022 U.S. Dist. LEXIS 44594 (S.D. Ohio 2022).) Campfield appealed the district court's ruling, and the appeal remains pending before the Sixth Circuit. (Stipulation of Facts, ECF No. 33, PageID 162.)

    B. **ACE's Defense of Safelite.**

On January 8, 2016, Safelite notified ACE of the underlying lawsuit and sought insurance coverage under the ACE policy in effect during the relevant period. (*Id.*) ACE acknowledged that the policy potentially covered the underlying suit but advised Safelite that it would first need to satisfy the $500,000 deductible. (*Id.* at PageID 162-63.)

On June 28, 2017, Safelite notified ACE that it had met the $500,000 deductible, and ACE thereafter agreed to provide Safelite with a defense to Campfield's suit. (*Id.* at PageID 163.) Prior to Safelite tendering the defense to Discover and Zurich, ACE incurred $4,971,636.70 in defense expenses. (*Id.* at PageID 164.) For the purposes of this litigation, Discover and Zurich have agreed not to contest whether these defense expenses were reasonable and necessary. (*Id.*)

    C. **ACE Notifies Defendants of Campfield Litigation.**

On October 29, 2018, ACE requested that Safelite identify its commercial general liability insurers prior to December 31, 2012 (the effective date of the first ACE policy). (*Id.*) Safelite complied the next day, identifying Discover. (*Id.*) Prior to this, ACE was unaware that Safelite had any other prior insurer. (*Id.*)

Next, ACE asked Safelite to provide notice of the Campfield litigation to its insurers that had issued policies prior to December 31, 2012. (*Id.*) Safelite informed ACE that it would do so, and on July 1, 2019, Safelite provided ACE with a list of carriers that Safelite would notify, which

3

included Discover and Zurich. (*Id.*) On August 9, 2019—more than eight months after ACE learned of the Discover policy and nearly four years after Campfield filed suit—Safelite notified Discover and Zurich of the underlying Campfield action. (*Id.* at PageID 164-65.) Prior to this notice, Discover and Zurich were unaware of the Campfield litigation. (*Id.* at PageID 165.)

### D. ACE Sues Defendants Seeking Equitable Contribution.

In October 2019, ACE informed Discover and Zurich that it intended to seek equitable contribution for the defense expenses ACE incurred in defending Safelite prior to August 9, 2019, which totaled $4,971,636.70. (*Id.* at 164-65.) Although Discover and Zurich agreed to reimburse ACE in equal shares (one-third each) for all reasonable post-tender defense costs, they declined to reimburse ACE for any of the pre-tender defense costs. (*Id.* at 165-66.) Subsequently, on February 9, 2021, ACE filed the instant lawsuit seeking equitable contribution from Discover and Zurich. (*Id.* at PageID 166.)

### E. The Policies.

ACE issued seven commercial general liability ("CGL") policies to Safelite for annual policy periods from December 31, 2012 through December 31, 2019. (*Id.* at PageID 160.) Discover issued two CGL policies to Safelite from December 31, 2010 through December 31, 2012. (*Id.* at 161.) And Zurich issued nine CGL policies to Safelite from December 31, 2001 through December 31, 2010. (*Id.*)

These policies contain much of the same relevant language. For example, ACE, Discover, and Zurich each promised to "pay those sums that the insured [Safelite] becomes legally obligated to pay as damages because of 'personal and advertising injury'" caused by an offense occurring during the applicable policy period. (*E.g.*, ACE Policy, ECF No. 33-3, p. 48; Discover Policy, ECF No. 33-9, p. 27; Zurich Policy, ECF No. 33-19, p. 17.) Each party also limited its liability for "personal and advertising injury" to each policy's "General Aggregate Limit." (*E.g.*, ACE Policy,

4

ECF No. 33-3, pp. 52-53; Discover Policy, ECF No. 33-9, p. 31; Zurich Policy, ECF No. 33-19, p. 21.) And each policy also imposes on the insurer the duty to defend Safelite against any suit seeking a potentially covered claim, but Safelite must provide notice of such a suit to ACE and Zurich "as soon as practicable" and to Discover "as soon as possible, but no later than 30 calendar days from the date you are notified of such 'incident.'" (*E.g.*, ACE Policy, ECF No. 33-3, pp. 48, 52; Discover Policy, ECF No. 33-9, pp. 40, 43; Zurich Policy, ECF No. 33-19, pp. 17, 21-22.)

For the purposes of this lawsuit, Discover and Zurich stipulate that the complaint and amended complaint in the Campfield litigation trigger a duty to defend under their policies except for those defense expenses incurred prior to August 9, 2019. (*Id.* at PageID 165.)

**F. Procedural History.**

As a result of the events described above, ACE brought the instant action seeking equitable contribution from Discover and Zurich for pre-tender defense costs. (*See generally*, Compl., ECF No. 3.) ACE filed a motion for summary judgment asking the Court to find, as a matter of law, that Discover and Zurich must each pay ACE equitable contribution in the amount of $1,657,212.23. (ACE Mot. Summ. J., ECF No. 35, at p. 13.) Discover and Zurich jointly filed their opposition and moved for summary judgment in their favor. (Joint Mot. Summ. J., ECF No. 39.) Discover, in addition to its joint motion for summary judgment with Zurich, also filed an individual motion for summary judgment. (Discover Mot. Summ. J., ECF No. 38.) ACE then filed its opposition to Discover and Zurich's motions coupled with its reply to Discover and Zurich's opposition. (ACE Reply, ECF No. 40.) Discover and Zurich jointly replied to ACE's opposition to their joint motion for summary judgment (Joint Reply, ECF No. 45), and Discover replied individually to ACE's opposition to its individual motion for summary judgment (Discover Reply, ECF No. 46). This matter is ripe for review.

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Here, the parties have filed cross-motions for summary judgment. Each party, as a movant, bears the burden of meeting the summary judgment standard. *Ray v. McCloud*, 507 F. Supp. 3d 925, 930 (S.D. Ohio 2020). The failure of one party to carry its burden does not mean that the other party should prevail on its motion; rather, the court should "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Id.* (quoting *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994)).

The parties have stipulated to all material facts in the record before the Court. (*See* Stipulation of Facts, ECF No. 33.)

## III. ANALYSIS

The parties have each moved for summary judgment on ACE's claim for equitable contribution. ACE states its theory of the case as follows:

> ACE is entitled to equitable contribution from Zurich and Discover because (a) the underlying lawsuit alleged potentially-covered offenses in all three insurers' policy periods; (b) Safelite target tendered its request for a defense to ACE alone; (c) ACE fulfilled its duty to defend Safelite against the entire lawsuit, including alleged offenses occurring outside ACE's policy period and during Zurich and Discover's policy periods; and (d) Zurich and Discover were not prejudiced by Safelite's failure to timely notify them of the lawsuit. *Pennsylvania General Insurance Co. v. Park-Ohio Industries*, 126 Ohio St. 3d 98, 2010-Ohio-2745, 930 N.E.2d 800, ¶ 2 (holding that a defending insurer's claim for equitable contribution "will be barred only if the failure to notify resulted in prejudice to the nontargeted insurer").

(ACE Reply, ECF No. 40, at pp. 1-2.) Discover and Zurich, on the other hand, argue that ACE's claim is without merit. More precisely, they argue that they are entitled to summary judgment

6

because (1) the cases on which ACE relies, specifically *Park-Ohio* and *Goodyear*,[1] apply only in the unique context of long-tail, progressive injury claims—a context far removed from the Lanham Act claims at issue in the Campfield litigation; and (2) given that *Park-Ohio* and *Goodyear* are inapplicable to the instant action, Discover and Zurich are not responsible for pre-tender defense costs under established Ohio law, and therefore there is no joint defense obligation from which equitable contribution can arise. The Court agrees with Discover and Zurich.

### A. Whether *Park-Ohio* Controls.

ACE argues that the Court should follow precedent that the Supreme Court of Ohio established in *Park-Ohio*. *Park-Ohio* arose from an insured (Park-Ohio) that was sued for asbestos-related injuries following the plaintiff's mesothelioma diagnosis. *Park-Ohio Indus.*, 930 N.E.2d at 803. Approximately five months after learning of the lawsuit, Park-Ohio notified one of its insurers (Penn General) of the underlying lawsuit. *Id.* Several months later, Park-Ohio settled with the plaintiff, and Penn General, the targeted insurer, found the settlement reasonable. *Id.* Almost two years after plaintiff filed suit, Park-Ohio notified Penn General that Park-Ohio had additional policies with other carriers covering the relevant period. *Id.* Within two months of learning of these nontargeted insurers, Penn General notified them of its intent to seek contribution. *Id.* at 804. The nontargeted insurers declined to pay Penn General, arguing, *inter alia*, that Park-Ohio's failure to provide timely notice of the underlying claim resulted in prejudice, thus barring coverage. *Id.*

The Supreme Court of Ohio, relying on the "all-sums" approach set forth in *Goodyear* (a progressive-injury case arising from environmental pollution), affirmed the Eighth District Court of Appeals' decision finding that Penn General was entitled to contribution from the nontargeted insurers. *Id.* at 803.

---

[1] *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 769 N.E.2d 835 (Ohio 2002).

The all-sums approach allocates insurance coverage by applying joint and several liability; in other words, this approach allows an insured to "select[] one insurer (the 'targeted insurer'), from which it is able to obtain a defense to the action and full coverage for any eventual judgment. The targeted insurer is then able to file a later action against any other insurers (the 'nontargeted insurers') to obtain contribution." *Id.* at 805. Under the all-sums approach, nontargeted insurers are liable for contribution unless the untimely notice results in prejudice. *Id.* at 807.

In rejecting the nontargeted insurers' argument that they were prejudiced "because they had no opportunity to defend their interests in the [underlying] matter, including investigating the claim, choosing counsel, and determining litigation settlement strategy," the court reasoned that this streamlined recovery process "presupposes that some insurers might not receive an opportunity to sit at the negotiation table and that those insurers must wait for a resolution of the underlying case." *Id.* at 807-08. Thus, "[b]ecause *Goodyear* created an equitable approach to the unique situation surrounding the allocation of liability in progressive-injury cases," Park-Ohio's notice to the nontargeted insurers was "within a reasonable time" and adhered to the all-sums procedure in *Goodyear*, and therefore there was no prejudice. *Id.*

ACE argues that in this action, where the underlying suit alleged "personal and advertising injury" resulting from offenses allegedly taking place during all three carriers' policy periods, *Park-Ohio* should control. (ACE Mot. Summ. J., ECF No. 35, at p. 9.) But ACE's position conflicts with post-*Park-Ohio* precedent confining *Goodyear's* all-sums approach to progressive-injury cases. *See Lubrizol Advanced Materials, Inc. v. Nat'l Union Fire Ins. Co.*, 160 N.E.3d 701 (Ohio 2020).

*Lubrizol* arose from an insured's (Lubrizol) settlement with a pipe manufacturer, in which Lubrizol became legally obligated to pay the pipe manufacturer after furnishing allegedly defective resin (a material used to make pipes). *Id.* at 702. Seeking indemnification, Lubrizol sued National

8

Union Fire Insurance Company, which insured Lubrizol during the relevant period, though other insurers covered Lubrizol at various points during the time in which Lubrizol sold the allegedly defective resin. *Id.* Lubrizol, relying on the *Goodyear* all-sums approach, argued that it was entitled to recover all defense costs incurred in defending and settling the underlying lawsuit, as well as past and future anticipated defense costs in related litigation. *Id.* at 702-03. National Union counterclaimed, moving for a declaration that actual or pro rata allocation—not *Goodyear's* all-sums approach—was appropriate because the alleged harms were discrete and knowable. *Id.* at 704.

The Supreme Court of Ohio agreed with National Union. The court declined to apply the *Goodyear* approach, noting that its utility "arises in situations involving long-term injury or damage, such as environmental cleanup claims where it is difficult to determine which insurer must bear the loss." *Id.* at 705. Unlike *Goodyear* and *Park-Ohio*, "in which there was an injurious process that beg[an] with an initial exposure and end[ed] with manifestation of disease but that continued to develop injury at all points in between," *Lubrizol* involved injuries occurring at a discernible time. *Id.* at 706 (internal quotations omitted). Furthermore, the court stated that *even if* the underlying suit constituted a progressive injury, the *Goodyear* approach would still be inapplicable. *Id.* at 705-06 ("But, even if Lubrizol's assertions are true, we would conclude that allocation under *Goodyear* is unnecessary. As National Union states, the time of damage is known or knowable."). Thus, *Lubrizol* clarifies the reach of *Park-Ohio* and *Goodyear*—that is, where "the injury or damage for which liability coverage is sought occurred at a discernable time," or if the time of damage is known or knowable," then all-sums allocation is inappropriate. *Id.* at 705-06.

Here, the undisputed facts demonstrate that the time of damage in the Campfield litigation is "known or knowable," thus precluding all-sums allocation. *Id.* The Campfield amended complaint identifies specific instances of Safelite's alleged misrepresentations. (Campfield Am.

9

Complaint, ECF No 33-21, PageID 711 (noting that discovery has revealed Safelite's alleged misrepresentations on Safelite's website, in YouTube videos, Safelite brochures, Safelite bulletins, television ads, radio spots, press releases, and on third-party websites for which Safelite provides marketing material).)[2] Given the specificity of the alleged misrepresentations, including when they were made, the Court is convinced that, although the exact time of damage may not have been known at the time Campfield filed suit, the time of damage is at least "knowable."[3] Unlike *Goodyear* and *Park-Ohio*, in which there was an injurious process that began with an initial exposure and ended with manifestation of disease but that continued to develop injury at all points in between, the Campfield litigation involved injuries occurring at a discernible time. Therefore, in following the explicit guidance provided in *Lubrizol*, the Court finds that the *Goodyear* all-sums approach, as clarified in *Park-Ohio*, does not govern the instant action.

### B. ACE Cannot Seek Equitable Contribution for Pre-tender Defense Costs.

As set forth in greater detail below, ACE cannot seek equitable contribution from Discover and Zurich for the pre-tender litigation expenses because equitable contribution requires the existence of a shared obligation, and Discover and Zurich simply did not share this obligation with ACE.

#### 1. Equitable contribution requires a shared obligation.

Equitable contribution allows an insurer "to recover amounts paid in excess of its fair share of an obligation shared by other insurers." *Resco Holdings, L.L.C. v. AIU Ins. Co.*, 112 N.E.3d 503, 507 (Ohio Ct. App. 2018). In other words, equitable contribution "is the right of a person who

---

[2] Discover and Zurich identify additional alleged misrepresentations from Safelite that are detailed in Campfield's amended complaint. (Joint Reply, ECF No. 45, at 3.)

[3] Tellingly, Campfield's amended complaint requested relief in the form of lost profits (ECF No. 33-21, at PageID 738), which requires the injured party to substantiate the amount of lost profits "by calculations based on facts available or in evidence, otherwise they are speculative and uncertain." *Matco Tools Corp. v. Urquhart*, 435 F. Supp. 3d 802, 813 (N.D. Ohio 2020). This, too, suggests the time of damage is knowable.

has been compelled to pay what another should pay in part to require partial (usually proportionate) reimbursement and arises from principles of equity and natural justice." *Clarendon Nat'l Ins. Co. v. Lexington Ins. Co.*, 312 F. Supp. 3d 639, 645 (N.D. Ohio 2018) (quoting *Travelers Indem. Co. v. Trowbridge*, 321 N.E.2d 787, 788 (Ohio 1975), *overruled on other grounds by Motorists Mut. Ins. Co. v. Huron Rd. Hosp.*, 653 N.E.2d 235 (Ohio 1995)). This doctrine "equalizes burdens and recognizes and enforces the reasonable expectations" of co-obligors. *Camp v. Bostwick*, 20 Ohio St. 337, 347 (1870). Accordingly, a plaintiff seeking equitable contribution must show (1) the existence of a shared obligation, (2) the payment of the obligation by the plaintiff, and (3) the defendant's failure to pay its proportionate share. *Gaster v. Waggoner*, 26 Ohio St. 450, 451-52 (Ohio 1875); *see also McDougall v. Cent. Nat'l Bank*, 104 N.E.2d 441, 445 (Ohio 1952).

> **2. Discover and Zurich do not share an obligation with ACE to contribute to the pre-tender defense costs.**

ACE cannot show that Discover and Zurich shared ACE's obligation for the pre-tender expenses, and therefore ACE cannot prevail on its claim for equitable contribution. In Ohio, depending on the surrounding circumstances, insurers may not be liable for pre-tender defense costs when the insured fails to provide timely notice. *See Dover Lake Park v. Scottsdale Ins. Co.*, 2003-Ohio-3312, ¶ 15 (Ohio Ct. App.) (excusing insurer from covering pre-tender litigation expenses where insured failed to provide timely notice in accordance with the relevant policy); *see also W. Reserve Mut. Cas. Co. v. OK Café & Catering, Inc.*, 2013-Ohio-3397, ¶ 22 (Ohio Ct. App.) (finding that insured's failure to comply with policy's prompt-notice provision relieved insurer from obligation to provide pre-tender coverage). This generally—but not always—requires the insurer to demonstrate that the insured's untimely notice resulted in prejudice to the insurer. *Compare Ferrando v. Auto-Owners Mut. Ins. Co.*, 781 N.E.2d 927, 944 (Ohio 2002) (requiring inquiry into insurer's prejudice before finding forfeiture of coverage) *with Dover Lake Park*, 2003-Ohio-3312, ¶¶ 12-15 (Ohio Ct. App.), *appeal declined*, 798 N.E.2d 406 (Ohio 2003) (declining to

require the prejudice analysis set forth in *Ferrando*, noting *Ferrando's* rationales supporting the prejudice inquiry were inapplicable to the present facts).

To appreciate when a court must inquire into the insurer's prejudice following late notice, it is useful to take a closer look at *Ferrando* and *Dover Lake*. In *Ferrando*, a case involving an insured's failure to comply with a notice requirement in his UIM policy, the Supreme Court of Ohio identified three rationales underpinning the prejudice inquiry in late-notice cases: First, the adhesive nature of insurance contracts—that is, the insured has little (if any) bargaining power when entering into the contract; second, the public interest in compensating tort victims, including innocent parties; and third, the inequity of an insured forfeiting its insurance benefits based on a technical violation of a notice provision. *Ferrando*, 781 N.E.2d at 935. The *Ferrando* court also turned to the Restatement (Second) of the Law of Contracts, which states: "To the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange." *Id.* at 935-36 (citing *Alcazar v. Hayes*, 982 S.W.2d 845, 853 (Tenn. 1998), which held that "the notice requirement is immaterial to the insurance contract in the event that the insurer is not prejudiced").

*Dover Lake* strikes a different pose. This case began in May 1999, when the insured corporation was sued for injuries occurring on its premises and subsequently incurred substantial costs in litigating against the suit. *Dover Lake Park*, 2003-Ohio-3312, at ¶ 4. On April 2, 2001, two weeks before trial, the insured, which had a commercial general liability policy with a prompt-notice provision, notified its insurer of the lawsuit and the plaintiff's settlement demand. *Id.* ¶¶ 2-3. The insurer agreed to pay the settlement demand but refused to reimburse the insured for the pre-tender litigation expenses. *Id.* at ¶¶ 4-5. The insured sued, and the jury returned a verdict in favor of the insurer. *Id.* at ¶ 6.

On appeal before the 9th District, the insured asserted multiple errors, including that the trial court erred in denying the insured's proposed jury instruction on prejudice by late notice. *Id.* The appellate court affirmed the trial court's denial of the proposed instruction because the prejudice inquiry was inapplicable to the question of whether the insured's late notice relieved the insurer of its obligation to reimburse the pre-tender expenses. *Id.* at ¶¶ 11-12. The court acknowledged the holding in *Ferrando* but noted that the policy reasons undergirding *Ferrando* were inapplicable to the case before it. *Id.* at ¶¶ 12-13. Of particular importance, because the insurer had covered the settlement payment to the plaintiff in the underlying suit, the public interest in compensating tort victims was of no concern. Further, the insured's failure to notify the insurer was "not a mere 'technical violation'" because the untimely notice prevented the insurer from determining whether to exercise its contractual right to handle the investigation and defense of the claim. *Id.* at ¶ 14. Finally, in contrast to *Ferrando*, the insurer in *Dover Lake* would not receive a windfall if its reimbursement obligations were excused; the insurer had already paid the settlement amount, with the only remaining monies being the pre-tender litigation expenses. *Id.* These facts, when analyzed against the backdrop of *Ferrando*, led the court to conclude:

> [W]here [the insured] provided unreasonably late notice of [the underlying plaintiff's claim] to its insurer…, the prejudice inquiry set forth in *Ferrando* is not applicable to a determination of [the insurer's] liability for failure to reimburse pre-tender litigation expenses incurred by [the insured] in defending against the claim. Rather, once the jury concluded that [the insured] breached its obligations under the endorsement by failing to timely notify [the insurer] of the claim, [the insurer] was excused from its obligation to reimburse [the insured] for its pre-tender litigation expenses incurred in defending against the claim.

*Id.* at ¶ 15.

This Court begins by assessing whether Safelite's notice to Discover and Zurich was unreasonably late. Under established Ohio law, "a notice provision requiring notice to the insurer 'as soon as practicable' requires notice within a reasonable amount of time in light of the

13

surrounding facts and circumstances." *Ormet Primary Aluminum Corp. v. Emplrs. Ins. of Wausau*, 725 N.E.2d 646, 655 (Ohio 2000). Here, the Zurich policies require notice "as soon as practicable" and the Discover policies require notice "as soon as possible, but no later than 30 calendar days from the date [the insured is] notified of such 'incident'"; The uncontroverted record shows that Safelite waited nearly four years after Campfield filed suit before notifying Discover and Zurich. This nearly four-year delay, coupled with the evidence indicating that Safelite knew how to provide notice because it did so with ACE shortly after Campfield filed suit, leads the Court to conclude that Safelite's notice to Discover and Zurich was unreasonably late, and therefore breached the relevant policies' prompt-notice provisions. *See, e.g.*, *Champion Spark Plug Co. v. Fidelity & Cas. Co.*, 687 N.E.2d 785, 790 (Ohio Ct. App. 1996) (3½-year delay unreasonable as a matter of law); *Helman v. Hartford Fire Ins. Co.*, 664 N.E.2d 991, 994 (Ohio Ct. App. 1995) (2-year delay unreasonable as a matter of law); *Nickschinski v. Sentry Ins. Co.*, 623 N.E.2d 660, 664-65 (Ohio Ct. App. 1993) (1-year delay unreasonable as a matter of law); *Patrick v. Auto-Owners Ins. Co.*, (1982), 449 N.E.2d 790 (Ohio Ct. App. 1982) (delay of more than one year unreasonable as a matter of law).

This brings the Court to the next question: whether Safelite's late notice requires a prejudice inquiry before excusing Discover and Zurich from their obligation to cover pre-tender defense costs. The Court answers in the negative. The undisputed record establishes that the analysis in *Dover Lake*—not *Ferrando*—is directly applicable. Like *Dover Lake*, excusing Discover and Zurich from their obligation to pay pre-tender defense costs would not result in the failure to compensate a tort victim; the *Campfield* litigation simply did not involve an uncompensated tort victim.

Next, just as the insured's late notice prevented the insurer from being able to exercise its rights in *Dover Lake*, Safelite's late notice (which arrived *after* the district court had already ruled

14

on Safelite's motion to dismiss) precluded Discover and Zurich from assuming control of the investigation and defense against Campfield's claims.

Finally, relieving Discover and Zurich from liability for pre-tender defense costs would not amount to a windfall at the insured's expense. Safelite has been whole throughout the Campfield litigation; ACE covered Safelite's pre-tender expenses, and ACE, Discover, and Zurich agreed to jointly share the post-tender expenses. Moreover, *Ferrando* assessed "the extent that the non-occurrence of a condition would cause disproportionate forfeiture" to the insured, but the facts before this Court show that Safelite has forfeited *nothing*. Thus, the Court finds that had Safelite tendered its defense to Discover and Zurich requesting coverage of its *pre*-tender defense costs, Safelite's unreasonably late notice would excuse Discover and Zurich from their obligation to pay the pre-tender expenses—and no prejudice inquiry would be necessary.[4] The Court will not grant ACE rights greater than those belonging to the insured; accordingly, Discover and Zurich, unlike ACE, have no obligation to cover the defense costs prior to August 9, 2019. And without a joint obligation, there can be no viable claim for equitable contribution. Discover and Zurich, therefore, are entitled to judgment as a matter of law.

### 3. The Court's decision does not lead to an inequitable result.

Equity seeks to enforce the reasonable expectations of the parties, and that is what follows from this decision. ACE undertook the contractual duty to cover Safelite's defense costs, with the extent of its duties cabined by each of its policies' limits of insurance, and ACE received consideration for doing so. Despite ACE's position to the contrary, requiring ACE to perform an obligation to which it expressly agreed does not lead to inequity.

Furthermore, ACE alone defended Safelite in the Campfield litigation for several years while being completely unaware that Safelite had other policies that Campfield's suit potentially

---

[4] This Opinion and Order should *not* be interpreted as suggesting that Discover and Zurich are also relieved from the post-tender defense costs.

triggered. (*See* Stipulation of Facts, ECF No. 33, PageID 164 ("ACE did not make any inquiries to any person or entity outside of ACE to ascertain the identity of any of Safelite's other commercial general liability insurers, nor was ACE aware of the identity of any such insurers prior to receiving Safelite's response to ACE's October 29, 2018 inquiry.").) During this period, ACE could have enforced the cooperation clauses in its policies to expedite Safelite's identification of Discover and Zurich. (*See, e.g.*, ACE Policy, ECF No. 33-1, pp. 21-22 (in the event of an "Occurrence, Offense, claim Or Suit . . . You . . . must . . . Cooperate with us in the investigation or settlement of the claim or defense against the 'suit'…"); *see also Citizens Gas Dev. Co. v. Buckeye Union Ins. Co.*, 1986 Ohio App. LEXIS 7684, at *11 (Ohio Ct. App. 1986) (citing *Luntz v. Stern*, 20 N.E.2d 241, 244 (Ohio 1939) for the proposition that "the insured must substantially disclose information reasonably demanded by the insurer" to avoid breaching a cooperation clause in an insurance contract).) But ACE did not do so. The Court will not create a fiction in which ACE reasonably expected other primary insurers to share in the pre-tender defense costs, at least until after October 2018—more than two and a half years after Safelite notified ACE of the Campfield litigation. As such, the Court's holding, which aligns with the reasonable expectations of each party, does not lead to an inequitable result.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Discover and Zurich's Motion for Summary Judgment (ECF No. 39); **DENIES** ACE's Motion for Summary Judgment (ECF No. 34); **DENIES as moot** Discover's Individual Cross-Motion for Summary Judgment (ECF No. 38); and **DENIES as moot** the parties' Joint Motion to Vacate Settlement Conference and Trial Dates (ECF No. 48). The Clerk is directed to **ENTER JUDGMENT** in favor of Defendants and close this case.

**IT IS SO ORDERED.**

**10/28/2022**              **s/Edmund A. Sargus, Jr.**
**DATE**                    **EDMUND A. SARGUS, JR.**
                            **UNITED STATES DISTRICT JUDGE**