# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**ACE AMERICAN INSURANCE COMPANY,**

        **Plaintiff,**                  **Case No. 2:21-cv-1127**

                                       **Judge Edmund A. Sargus, Jr.**

      **v.**                           **Magistrate Judge Elizabeth P. Deavers**

**ZURICH AMERICAN INSURANCE COMPANY,** *et al.*,

        **Defendants.**

## <u>OPINION AND ORDER</u>

Plaintiff ACE American Insurance Company owes nearly $5 million in litigation costs incurred by an insured party in an underlying lawsuit between competing auto glass repair companies. In this case, ACE seeks equitable contribution from two other insurers—Defendants Discover Property & Casualty Insurance Company and Zurich American Insurance Company—claiming all three insurers shared a duty to defend the insured party in the underlying lawsuit. Discover and Zurich deny that they are liable for those costs because they were incurred before the insured party notified them about the litigation and because the insured party incurred voluntary payments (including attorney's fees and costs) without their consent, breaching its insurance contracts.

This matter is now before the Court on ACE's Motion for Summary Judgment (ACE Mot., ECF No. 62), Discover's Cross-Motion for Summary Judgment (Discover Mot., ECF No. 67), and Zurich's Cross-Motion for Summary Judgment (Zurich Mot., ECF No. 66). ACE argues that, based on applicable Ohio law, the insured party's breaches of the notice and voluntary payments provisions in Discover and Zurich's contracts do not allow those insurers to deny coverage of pre-

tender defense costs in the underlying litigation unless the insurers can show prejudice from the breaches. This Court agrees and further concludes that Discover and Zurich were not, in fact, prejudiced by the insured's breaches. Accordingly, ACE is owed equitable contribution from Discover and Zurich regarding the insured party's pre-tender defense costs.

For the reasons stated in this Opinion and Order, the Court **GRANTS** ACE's Motion for Summary Judgment (ACE Mot.), **DENIES** Discover's Cross-Motion for Summary Judgment (Discover Mot., ECF No. 67), and **DENIES** Zurich's Cross-Motion for Summary Judgment (Zurich Mot., ECF No. 66).

## BACKGROUND

### I.     The Underlying Lawsuit

On August 18, 2015, Richard Campfield and Ultra Bond, Inc. (collectively "Campfield") filed a lawsuit against Safelite Group, Inc. in the United States District Court for the Southern District of Ohio. (Stip. of Facts, ECF No. 33, PageID 162); *see Campfield v. Safelite Grp., Inc.*, Case No. 2:15-cv-2733, 2021 WL 1215869, at *5 (S.D. Ohio Mar. 31, 2021) (Watson, J.), *aff'd in part, rev'd in part*, 91 F.4th 401 (6th Cir. 2024). Campfield is a competitor to Safelite who develops, manufactures, and sells products designed to repair windshield cracks greater than six inches. (Campfield Compl., ECF No. 33-21, PageID 3404–05.) Campfield alleged that Safelite violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), by "knowingly and falsely stat[ing] that windshield cracks longer than six inches cannot be repaired and require that the windshield be replaced or, conversely, that only windshield cracks up to six inches (or the size of a dollar bill) can be safely repaired." (*Id.*, PageID 3441.) Campfield alleged that, over the course of several years, Safelite made numerous false statements and misrepresentations disputing and rejecting the safety of repairing cracks longer than six inches, and that these statements hurt his

business. (*Id.* at PageID 3397, 3404, 3408, 3411–12, 3421–22, 3443.)

After nearly six years of litigation, on March 31, 2021, the district court entered summary judgment in Safelite's favor on Campfield's claims. (Stip. of Facts, PageID 162); *see Campfield*, 2021 WL 1215869, at *16. The district court also held that Campfield's claims for damages before it filed the lawsuit were barred by the doctrine of laches. *Id.* at *8; *see Campfield*, 91 F.4th at 409 (laches decision not appealed). Later, the district court granted summary judgment to Campfield on a counterclaim brought by Safelite and entered a final judgment in Safelite's favor on Campfield's claims. (Stip. of Facts, PageID 162); *see Campfield v. Safelite Grp., Inc.*, Case No. 2:15-cv-2733, 2022 WL 721772 (S.D. Ohio Feb. 11, 2022) (Watson, J.), *aff'd in part, rev'd in part*, 91 F.4th 401 (6th Cir. 2024).

The parties cross-appealed. *See Campfield*, 91 F.4th at 409. The Sixth Circuit reversed the district court's grant of summary judgment to Safelite on Campfield's Lanham Act claims and reversed the district court's grant of summary judgment to Campfield on one of Safelite's counterclaims. *Id.* at 417. Those claims are now pending before the district court on remand.

## II. The Insurers' Defense of Safelite in the Underlying Lawsuit

Safelite hired the law firm Jones Day to defend it in the underlying litigation prior to notifying any of its insurers about the lawsuit. (*See* Stip. of Facts, PageID 162.) Safelite then notified ACE of the underlying lawsuit on January 8, 2016, and sought insurance coverage for its defense costs. (*Id.*) ACE acknowledged that its policy potentially covered the underlying suit but advised Safelite that it would first need to satisfy the policy's $500,000 deductible before ACE would pay any defense costs. (*Id.*, PageID 162–63.)

On June 28, 2017, Safelite notified ACE that it had met the $500,000 deductible, and ACE thereafter agreed to provide for Safelite's defense to Campfield's suit. (*Id.*, PageID 163.) On

October 29, 2018, ACE requested that Safelite identify its commercial general liability insurers that provided coverage prior to December 31, 2012, which was the effective date of ACE's first policy. (*Id.*, PageID 164.) Safelite complied the next day, identifying Discover. (*Id.*) Prior to this, ACE was unaware that Safelite had any other commercial general liability insurer. (*Id.*)

Next, ACE asked Safelite to provide notice of the *Campfield* litigation to its insurers that had issued policies to Safelite prior to December 31, 2012. (*Id.*) Safelite informed ACE that it would do so, and on July 1, 2019, Safelite provided ACE with a list of insurance carriers that Safelite would notify. (*Id.*) This list included both Discover and Zurich. (*Id.*) On August 9, 2019—more than eight months after ACE learned of the Discover policy and nearly four years after Campfield filed suit—Safelite notified Discover and Zurich of the underlying *Campfield* action for the first time. (*Id.*, PageID 164–65.) Prior to this notice, Discover and Zurich were unaware of the *Campfield* litigation. (*Id.*, PageID 165.)

Before Safelite notified Discover and Zurich about the lawsuit and tendered the defense to them, Safelite incurred $4,971,636.70 in defense expenses (hereinafter, "pre-tender defense costs") that were paid by ACE. (*Id.*, PageID 164.) For the purposes of this litigation, Discover and Zurich have agreed not to contest that the pre-tender defense costs were "reasonable and necessary." (*Id.*)

In October 2019, ACE informed Discover and Zurich that it intended to seek equitable contribution from them for Safelite's pre-tender defense costs that ACE paid prior to August 9, 2019. (*Id.*, PageID 164–65.) Although Discover and Zurich agreed to reimburse ACE in equal shares (one-third per each insurer) for all reasonable post-tender defense costs, they declined to reimburse ACE for any pre-tender defense costs. (*Id.*, PageID 165–66.) On February 9, 2021, ACE filed the instant lawsuit seeking equitable contribution of one-third each from Discover and Zurich for the pre-tender defense costs. (*Id.*, PageID 166.)

### III. The Insurance Policies

ACE issued seven commercial general liability ("CGL") policies to Safelite for annual policy periods from December 31, 2012, through December 31, 2019. (*Id.*, PageID 160.) Discover issued two CGL policies to Safelite from December 31, 2010, through December 31, 2012. (*Id.*, PageID 161.) And Zurich issued nine CGL policies to Safelite from December 31, 2001, through December 31, 2010. (*Id.*) These policies contain much of the same relevant language. For example, ACE, Discover, and Zurich each promised to "pay those sums that the insured [Safelite] becomes legally obligated to pay as damages because of 'personal and advertising injury'" caused by a violation occurring during the applicable policy period. (*E.g.*, ACE Policy, ECF No. 33-3, PageID 736; Discover Policy, ECF No. 33-9, PageID 2200; Zurich Policy, ECF No. 33-19, PageID 3156.)

Each policy also imposed on the insurer the duty to defend Safelite against any suit seeking a potentially covered claim. Safelite had to provide notice of such a suit to ACE and Zurich "as soon as practicable" and to Discover "as soon as possible, but no later than 30 calendar days from the date you are notified of such 'incident.'" (*E.g.*, ACE Policy, ECF No. 33-3, PageID 741; Discover Policy, ECF No. 33-9, PageID 2213, 2216; Zurich Policy, ECF No. 33-19, PageID 3156, 3160–61.) Finally, each policy includes a voluntary payment provision providing: "No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." (*E.g.*, ACE Policy, PageID 741; Discover Policy, PageID 2205; Zurich Policy, PageID 3161.)

For the purposes of this lawsuit, Discover and Zurich stipulate that the complaint and amended complaint in the *Campfield* litigation trigger a duty to defend under their policies except for those pre-tender defense expenses incurred prior to August 9, 2019. (Stip. of Facts, PageID 165.)

## IV.    Procedural History of This Lawsuit

ACE brought this lawsuit in February 2021. (Compl., ECF No. 3.) ACE filed a motion for summary judgment asking the Court to find, as a matter of law, that Discover and Zurich each must pay ACE equitable contribution of one-third of Safelite's pre-tender defense costs. (ECF No. 35, PageID 3702.) Discover and Zurich opposed ACE's motion and filed cross-motions for summary judgment. (ECF Nos. 38, 39.)

This Court granted summary judgment to Discover and Zurich, holding that Safelite's notice of the *Campfield* litigation to Discover and Zurich "was unreasonably late, and therefore breached the relevant policies' prompt-notice provisions." (Opinion and Order, ECF No. 49, PageID 3996); *ACE Am. Ins. Co. v. Zurich Am. Ins. Co.*, Case No. 2:21-cv-1127, 2022 WL 16534826, at *7, 9 (S.D. Ohio Oct. 28, 2022), *vacated and remanded*, 2024 WL 945246 (6th Cir. 2024). Although "Ohio law generally requires prejudice for untimely notice to materially breach an insurance policy and allow an insurer to deny coverage," *ACE*, 2024 WL 945246, at *4, this Court held that an exception to the general rule applied based on the holding and logic articulated in *Dover Lake Park, Inc. v. Scottsdale Ins. Co.*, No. 21324, 2003 WL 21458956 (9th Dist. Ohio Ct. App. June 25, 2003). Thus, the Court held Discover and Zurich were not obligated to pay Safelite's pre-tender defense costs, and ACE could not recover from Discover and Zurich under the doctrine of equitable contribution. *ACE*, 2022 WL 16534826, at *8–9.

On appeal, the Sixth Circuit concluded that this Court should not have followed *Dover Lake* because the holding in that case is contrary to Ohio Supreme Court authority establishing the general rule that prejudice is required to allow an insurer to deny coverage based on a notice violation. *ACE*, 2024 WL 945246, at *4–5, citing *Ferrando v. Auto-Owners Mut. Ins. Co.*, 781 N.E.2d 927 (Ohio 2002). Therefore, the Sixth Circuit vacated this Court's judgment and remanded

6

the case for this Court to determine whether (1) Discover and Zurich were prejudiced by Safelite's untimely notice and, separately, whether (2) "the voluntary-payment provisions of Discover and Zurich's insurance policies mean they do not share a defense obligation with ACE."[1] *ACE*, 2024 WL 945246, at * 6. The latter issue concerns both whether the voluntary payment provisions were breached and, if so, whether prejudice is required under Ohio law to excuse the insurers' obligations to the insured for breaches of voluntary payment provisions.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Parties have filed cross-motions for summary judgment. Each party, as a movant, bears the burden of meeting the summary judgment standard. *Ray v. McCloud*, 507 F. Supp. 3d 925, 930

---

[1] Discover and Zurich raised voluntary payment provision arguments in their first motions for summary judgment, but this Court did not decide that issue because its holding on the notice provisions was dispositive. Separately, the Sixth Circuit agreed with this Court that Ohio's "all-sums" approach does not apply to this case and that "Ohio's general prejudice rules applied to this dispute." *ACE*, 2024 WL 945246, at *3–4. Therefore, that issue is not before this Court on remand.

(S.D. Ohio 2020) (Watson, J.). The failure of one party to carry its burden does not mean that the other party should prevail on its motion; rather, the Court should "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

The Parties have stipulated to facts in the record before the Court. (*See* Stip. of Facts, ECF No. 33.) But the Parties disagree over whether Discover and Zurich were prejudiced by Safelite's breaches, which is a question of fact. *Walls v. Amerisure Mut. Ins. Co.*, 343 F.3d 881, 887 (6th Cir. 2003) (applying Ohio law). The Court must determine "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

## ANALYSIS

### I. Equitable Contribution

The overall question in this litigation is whether, under Ohio law, ACE is entitled to equitable contribution from Discover and Zurich for the pre-tender defenses costs incurred by Safelite. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."). The doctrine of equitable contribution "is an equitable doctrine that rests upon the broad principle of justice, that where one has discharged a debt or obligation which others were equally bound with him to discharge, and thus removed a common burden, the others who have received a benefit ought in conscience to refund to him a ratable portion." *Resco Holdings, LLC v. AIU Ins. Co.*, 112 N.E.3d 503, 508 (8th Dist. Ohio Ct. App. 2018) (citations omitted). A plaintiff seeking equitable contribution must show, by a preponderance of the evidence, (1) the existence of a shared obligation; (2) the payment of the obligation by the plaintiff; and (3) the defendant's failure to pay

its proportionate share. *ACE*, 2024 WL 945246, at *2 (citing *McDougall v. Cent. Nat'l Bank*, 104 N.E.2d 441, 445 (Ohio 1952)). "Ohio courts 'apply the doctrine of contribution liberally since it is based on broad principles of equity.'" *Id.* (quoting *Resco Holdings*, 112 N.E.3d at 508).

The Parties agree that ACE paid Safelite's pre-tender defense costs in the amount of $4,971,636.70 and that those costs "were reasonable and necessary." (Stip. of Facts, PageID 164.) And it is undisputed that Discover and Zurich have not paid any pre-tender defenses costs. (*Id.*, PageID 164–65.) Therefore, whether Discover and Zurich must pay equitable contribution to ACE for Safelite's pre-tender defenses costs depends solely on whether ACE, Discover, and Zurich shared an obligation to defend Safelite. (*See* ACE Mot., PageID 4056; Discover Mot., PageID 4104–05; Zurich Mot., PageID 4090); *see also ACE*, 2024 WL 945246, at *2.

## II.   The Parties' Arguments

The Court applies general principles of Ohio contract law to determine whether Discover and Zurich had a shared obligation to pay Safelite's pre-tender defense costs. *See Krewina v. United Specialty Ins. Co.*, 221 N.E.3d 819, 823 (Ohio 2023). Two types of provisions are at issue. First, Discover and Zurich contend that Safelite breached the voluntary payment provisions in their insurance contracts, and, therefore, they did not have an obligation to defend Safelite before Safelite tendered the defense to them in 2019. (Discover Mot., PageID 4110; Zurich Mot., PageID 4091.) ACE concedes that Safelite breached those provisions but argues that a *material* breach (meaning that prejudice to the insurers resulted from the breach) is required under Ohio law to allow Discover and Zurich to deny coverage of pre-tender defense costs based on that breach. (ACE Mot., PageID 4061.) Discover and Zurich disagree, arguing that Safelite's breach of the voluntary payment provisions alone is sufficient and that no showing of prejudice is required under Ohio law. (Discover Mot., PageID 4112; Zurich Mot., PageID 4093.)

Second, in light of the Sixth Circuit's holding that Ohio law requires prejudice to the insurers for the breach of a notice provision to relieve insurers of their obligation to defend the insured, Discover and Zurich argue that Safelite's breach of their notice provisions was prejudicial. (Discover Mot., PageID 4123; Zurich Mot., PageID 4095); *ACE*, 2024 WL 945246, at *5–6. ACE argues that no prejudice occurred. (ACE Mot., PageID 4056.)

## III.    Ohio Law Regarding Breach of Insurance Contracts

"In diversity cases, the federal courts must apply state law 'in accordance with the then controlling decision of the highest state court.'" *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 517 (6th Cir. 2001) (quoting *United States v. Anderson County, Tennessee*, 761 F.2d 1169, 1173 (6th Cir. 1985)). But "[i]f the forum state's highest court has not addressed the issue," a court's task is to "ascertain from all available data, including the decisional law of the state's lower courts, what the state's highest court would decide if faced with the issue." *Id.* at 517.

The Ohio Supreme Court has held that prejudice is required for an insurer to deny coverage of defense costs both regarding an insured's breach of a notice provision and the breach of subrogation-related provisions, such as a consent-to-settle provision. *Ferrando*, 781 N.E.2d at 946–47. The court in *Ferrando* was not presented with the question of whether an insured's breach of a voluntary payment provision also requires prejudice, and the Ohio Supreme Court has not otherwise answered that question. Therefore, this Court must predict what the Ohio Supreme Court would hold in this situation. Undertaking that inquiry, this Court examines and applies the logic and reasoning of the Ohio Supreme Court's holdings in *Ferrando* regarding notice and consent-to-settle provisions and considers the applicability of those holdings to voluntary payment provisions. The Court also considers intermediate Ohio appellate caselaw on the issue.

### a. *Ferrando*'s Prejudice Requirement for Breach of Notice Provisions

Regarding the effects of an insured's breach of a notice provision in an insurance contract, Ohio law generally requires that the insurer is prejudiced for untimely notice to constitute a material breach, meaning the insurer could deny coverage for pre-notice defense costs. *Ferrando*, 781 N.E.2d at 947. In *Ferrando*, a provider of underinsured or uninsured motorist insurance argued it could be released from an obligation to provide coverage to an insured claimant due to the insured's untimely notice of a potential claim and the insured's decision to settle the potential claim without the provider's consent. *Id.* at 930. The Ohio Supreme Court held that "the insurer is relieved of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice." *Id.* at 945. Interpreting *Ferrando*, the Sixth Circuit here held that the Ohio Supreme Court's "broad holding established a general rule that an insurer is 'released from the obligation to provide [insurance] coverage when the insurer is prejudiced by the lack of reasonable notice.'" *ACE*, 2024 WL 945246, at *4 (quoting *Ferrando*, 781 N.E.2d at 930).

The Ohio Supreme Court relied on several factors to reach its holding regarding notice in *Ferrando*. First, it relied on its own precedent. In *Ormet Primary Aluminum Corp. v. Employers Ins. of Wausau*, 725 N.E.2d 646 (Ohio 2000), the Ohio Supreme Court "determined that the untimely notice of an environmental claim by the insured party prejudiced the insurers under the facts of that case." *Ferrando* at 944 (citing *Ormet*, 725 N.E.2d at at 656–57). As described in *Ferrando*, the court's holding in *Ormet* "indicated that Ohio does not follow the traditional rule in late-notice cases but follows the modern trend of inquiring into prejudice. Although *Ormet* was not an [uninsured or underinsured motorist] case and did not involve motor vehicle insurance, its core reasoning is applicable here." *Id.* at 944–45. The following excerpt from *Ormet*, favorably quoted in *Ferrando*, illustrates the court's "core reasoning":

> Notice provisions allow the insurer to become aware of occurrences early enough that it can have a meaningful opportunity to investigate. In addition, it provides the insurer the ability to determine whether the allegations state a claim that is covered by the policy. It allows the insurer to step in and control the potential litigation, protect its own interests, maintain the proper reserves in its accounts, and pursue possible subrogation claims. Further, it allows insurers to make timely investigations of occurrences in order to evaluate claims and to defend against fraudulent, invalid, or excessive claims.

*Ormet* at 655 (citations omitted); *see Ferrando* at 944 (favorably citing this excerpt from *Ormet*).

Additionally, the court favorably described the reasoning of courts in other states that have followed the "modern trend" of requiring prejudice regarding breaches of notice provisions. *Id.* at 944–45. The court observed that several factors support that trend, including (1) "the adhesive nature of insurance contracts," under which "the insured has little, if any, bargaining power"; (2) "the public policy objective of compensating tort victims"; and (3) "the inequity of the insurer receiving a windfall due to a technicality." *Ferrando* at 935 (quoting *Alcazar v. Hayes*, 982 S.W.2d 845, 850 (Tenn. 1998)).

### b. *Ferrando*'s Prejudice Requirement for Subrogation-Related Provisions

The Ohio Supreme Court held the prejudice requirement also applied regarding an "insured's breach of a consent-to-settle or other subrogation-related provision in a policy of insurance." *Id.* at 946. The Court explained several reasons supporting its decision to harmonize the standards for notice and consent-to-settle provisions by requiring prejudice in both. First, the Court explained "it is not logical that the breach of a notice provision should necessitate an inquiry into prejudice while the breach of a consent-to-settle provision should be deemed prejudicial to the insurer in all cases as a matter of law." *Id.* at 945. Therefore, "[t]o be consistent, the same fundamental inquiry should be applied in either case." *Id.*

Second, the court relied on the fact that "a clear majority of states" recognizing consent-to-settle provisions as valid require an inquiry into prejudice. *Id.* at 938, 945–46. It described those

12

states' reasoning as including (1) the fact "courts are loathe to sanction a forfeiture of coverage," and (2) "a perception that breaches of such provisions often have little prejudicial effect on the insurer's ability to protect its interests." *Id.* at 939. The court found that reasoning compelling. *Id.* at 946.

In both situations, the insured's breach is presumptively prejudicial, *id.* at 945–46, and "the insured party bears the burden of presenting evidence to rebut a presumption of prejudice," *id.* at 949.

### c. Applicability of *Ferrando* to Voluntary Payment Provisions

Following the Ohio Supreme Court's logic and reasoning in *Ferrando*, this Court concludes that the Ohio Supreme Court would apply *Ferrando*'s holding to voluntary payment provisions and require prejudice before allowing an insurer to deny coverage in the event of a breach, just like it did regarding notice and subrogation-related provisions.

#### i. Similarities Between Voluntary Payment Provisions and Provisions Requiring Prejudice Under *Ferrando*

Zurich explains that the voluntary payment provisions in its insurance contracts are "intended to ensure that Zurich had control over the handling, defense, compromise, and settlement of claims." (Zurich Mot., PageID 4095.) Discover states that its voluntary payment provisions ensure that it "is contractually entitled to control the defense—including the selection and control of defense counsel." (Discover Mot., PageID 4114.) Discover and Zurich contend that these purposes are broader than those implicated by notice provisions and subrogation-related provisions. But even accepting Discover and Zurich's views regarding the purpose of their voluntary payment provisions as accurate, that purpose is substantially similar to the purpose of notice provisions and of subrogation-related provisions as articulated by the Ohio Supreme Court.

As explained in *Ormet*, notice provisions allow an insurer to "have a meaningful

opportunity to investigate" and "to step in and control the potential litigation." *Ormet,* 725 N.E.2d at 655. So too with voluntary payment provisions, which encourage an insured to allow an insurer to handle potential claims against the insured, including the selection of counsel and litigation strategy, or else risk paying for those costs themselves. Further, the court in *Ormet* observed that notice provisions allow the insurer to "protect its own interests, maintain the proper reserves in its accounts, and pursue possible subrogation claims." *Id.* Discover and Zurich's explanations of their voluntary payment provisions strike the same tone. Last, the *Ormet* court observed that notice provisions "allow[] insurers to make timely investigations of occurrences in order to evaluate claims and to defend against fraudulent, invalid, or excessive claims." *Id.* There is little, if any, daylight between that description and the stated purpose of voluntary payment provisions: to have "control over the handling, defense, compromise, and settlement of claims" and to "control the defense." (Zurich Mot., PageID 4095; Discover Mot., PageID 4114.)

Voluntary payment provisions are also closely related to consent-to-settle provisions. In fact, the voluntary payment provisions at issue in this case essentially contain a "consent-to-settle" provision within them: all the policies provide that "[n]o insured will, except at that insured's own cost, voluntarily make a payment, *assume any obligation*, or incur any expense, other than for first aid, without our consent." (ACE Policy, PageID 741; Discover Policy, PageID 2205; Zurich Policy, PageID 3161) (emphasis added). Certainly "any obligation" could include the insured's agreement to pay a settlement, and Zurich admits that its "voluntary payment provision may include settlement of a claim." (Zurich Mot., PageID 4095 (contending nonetheless that the provision concerns more than the insurer's consent-to-settle).) This overlap makes sense considering the similar function of the provisions—just like with a consent-to-settle provision, the consequence of materially breaching a voluntary payment provision is that the insured pays their

own costs rather than having the right to coverage from the insurer.

Furthermore, an insured's breach of a voluntary payment provision will often accompany a breach of a prompt-notice provision. Naturally, if an insurer is unaware of underlying litigation due to the insured's failure to timely notify it about the litigation, any pre-tender litigation expenses incurred by the insured would be paid for without the insurer's consent. In such cases, like here, an insured's breach of a voluntary payments provision is essentially incidental to its breach of a notice provision. In that situation, just like with consent-to-settle provisions, "it is not logical that the breach of a notice provision should necessitate an inquiry into prejudice" while the breach of a voluntary payment provision should be prejudicial in all cases as a matter of law. *Ferrando*, 781 N.E.2d at 945.

It is possible the Ohio Supreme Court would not apply a prejudice requirement where, after the insurer becomes aware of the lawsuit and begins providing for the insured's defense, an insured breaches a voluntary payment provision by taking on defense expenses or settling a lawsuit without the insurer's consent. Such a situation might implicate different interests advanced by a voluntary payment provision, such as ensuring that the defense speaks with one voice and avoiding conflicting litigation strategies. But that is not the situation here. Based on the above analysis, this Court concludes that, at least where an insured's breach of a voluntary payment provision is accompanied by its breach of a notice provision, the Ohio Supreme Court would decide that "[t]o be consistent, the same fundamental inquiry should be applied in either case." *Id.*

### ii. Pre-*Ferrando* Ohio Appellate Court Decisions

Discover and Zurich rely on several pre-*Ferrando* decisions by intermediate Ohio appellate courts to argue that Ohio courts historically have distinguished between voluntary-payment provisions and subrogation-related provisions. (Discover Mot., PageID 4119; Zurich Mot., PageID

4094). But one such case, *Servpro-Domesticare of Anderson Hills, Inc. v. Grange Mut. Cas. Co.*, No. CA84-10-070, 1985 WL 7739 (12th Dist. Ohio Ct. App. Sept. 23, 1985), in fact showcases how the provisions are closely related.[2] In *Servpro*, an insurer negotiated a settlement on behalf of an insured with a customer who was dissatisfied with the insured's painting job. *Servpro* at *1. But the insurer refused to cover the settlement payment because the insured completed repairs for the customer before the insurer was involved in the matter. *Id.* The insurance policy prohibited the insured "except at its own risk, to voluntarily make any payments, assume any obligations or incur any expenses other than first aid for injured parties at the time of the accident." *Id.* at *3.

The court concluded that the insured violated that provision and allowed the insurer to deny coverage of the settlement without requiring it to show prejudice. *Id.* But more persuasive than that court's pre-*Ferrando* holding is the court's reasoning that "[p]ermitting the insured party to make such voluntary repairs and incur such expenses . . . without the insurer's consent would effectively deprive the insurer of the right it retains to settle claims and make full and complete investigations into the resolution of such claims." *Id.* This explanation of the relevant provision highlights the fundamental similarities between consent-to-settle and voluntary payment provisions: both relate to control of the litigation and the ability to investigate and control the terms of settlement. That logic supports a finding that, under *Ferrando*, the Ohio Supreme Court would apply a prejudice requirement to voluntary payment provisions, just like it does for consent-to-settle provisions. *Ferrando*, 781 N.E.2d at 949. To the extent that pre-*Ferrando* cases indicate otherwise, their persuasive weight is limited by *Ferrando* and post-*Ferrando* developments.

---

[2] Discover and Zurich also rely on the intermediate appellate court's pre-*Ferrando* holding in *Champion Spark Plug Co. v. Fid. & Cas. Co. of New York*, 687 N.E.2d 785 (6th Dist. Ohio Ct. App. 1996). The court in that case merely adopted the holding and reasoning of *Servpro* without further analysis. *Champion* at 793.

### iii.  Post-*Ferrando* Ohio Court Decisions

Discover and Zurich also rely on several post-*Ferrando* cases for the proposition that Ohio courts do not apply a prejudice requirement regarding voluntary payment provisions even after that case. (Discover Mot., PageID 4116–23; Zurich Mot., 4094–95.) But that argument is flawed in each instance.

First, in *Kincaid v. Erie Ins. Co.*, 944 N.E.2d 207 (Ohio 2010), the Ohio Supreme Court held that an insured did not have standing to bring an action for insurance coverage where the insured "did not present a claim for a loss potentially covered by his insurance and did not give notice to the insurer of the alleged loss prior to filing a complaint." *Kincaid* at 208. The insured, Kincaid, argued that the insurer, Erie, breached the contract by refusing to cover certain "incidental" items under an "additional payments" provision. *Id.* at 210. The provision indisputably provided coverage for court costs, litigation expenses, interest on judgment, and other reasonable expenses. *Id.* Kincaid sought coverage for other expenses, like postage, travel expenses, and earnings he lost while attending legal proceedings, but, prior to suing Erie for coverage of those costs, Kincaid never filed an insurance claim with Erie. *Id.* Therefore, Kincaid did not have standing to sue. *Id.* at 208.

Discover emphasizes the court's comment that "it defies common sense to expect an insurer to pay for incidental expenses that it does not know its insured incurred." *Id.* But, read in context, that comment is inapplicable to this case because the comment relates to expenses never even presented to the insurer as potentially covered costs, and the case concerned the insured's standing to sue given that no claims had been made. Here, it is uncontested that Safelite's pre-tender defense costs are tangible (calculated at $4,971,636.70), were "reasonable and necessary," were presented to and paid for by ACE, and that Discover and Zurich declined to cover those

expenses. (Stip. of Facts, PageID 164, 166.) Additionally, the court in *Kincaid* did not discuss the issue of prejudice or its holding in *Ferrando*. *Kincaid* is not directly applicable here.

The Court turns next to the intermediate appellate cases relied on by Discover and Zurich. First, in *State Hous. Auth. Risk Pool Ass'n, Inc. v. Erie Ins. Grp.*, 2004 WL 3090206 (11th Dist. Ohio Ct. App. Dec. 30, 2004), the appeals court held that an argument relating to a voluntary payments clause was not properly before the court on appeal. *Id.* at *5–6. Accordingly, its discussion on the merits was dicta and is not persuasive. *Id.* Regardless, the court explicitly held that the insurer in that case was prejudiced by an unreasonably late notice, and that issue and holding, unrelated to voluntary payments, was controlling. *Id.* at 4–5.

Second, Discover and Zurich's reliance on *NL Corp. v. Seneca Specialty Ins. Co.*, No. 28927, 2021 WL 1828100 (2d Dist. Ohio Ct. App. May 7, 2021) is also misplaced. In that case, the appeals court held that the insurer was not obligated to pay the defense costs of the insured because there was no "suit" that triggered the insurer's duty to defend. *NL Corp.* at *5. Here, by contrast, the *Campfield* litigation triggered the applicable insurance coverage. (*See* Stip. of Facts, PageID 165.) Thus, the court's discussion of a voluntary payment provision is not persuasive here.

Third, the decision in *Yates v. Estate of Ferguson*, No. C-090494, 2010 WL 877536 (1st Dist. Ohio Ct. App. Mar. 12, 2010) does not provide substantial guidance here. That court did not weigh *Ferrando*, and the indemnification argument referenced by Discover and Zurich depended on an Ohio statute specific to motor vehicle insurance. *Yates* at *2–3.

Ultimately, this Court concludes that, following *Ferrando*, the Ohio Supreme Court likely would apply a prejudice requirement for violations of voluntary payment provisions. It is especially likely that a prejudice requirement would be applied where, like here, the insured's breach of a voluntary payments provision is essentially incidental to its breach of a notice

18

provision—defense expenses incurred prior to the insurer becoming aware of the litigation of course will lack the insurer's consent. To the extent lower Ohio courts have allowed insurers to deny coverage of defense expenses without requiring prejudice where the insured violates a voluntary payments clause prior to notifying the insurer about the litigation, this Court concludes that such holdings likely conflict with the Ohio Supreme Court's holding in *Ferrando*.

## IV.    Breach and Prejudice Analysis

Having concluded that the Ohio Supreme Court would apply a prejudice requirement to voluntary payment provisions, this Court next applies the Ohio Supreme Court's two-step analysis for such situations. Under this approach, the court first determines whether the breach at issue actually occurred. *Ferrando*, 781 N.E.2d at 947. If there is a breach, the court then determines whether the insurer was prejudiced so that coverage must be forfeited. *Id.*

### a.    Notice Provisions: Breach and Prejudice

Safelite's notice to Discover and Zurich regarding the underlying lawsuit was unreasonably late, and it therefore breached the relevant policies' notice provisions. *See ACE*, 2024 WL 945246 at *2–3, 5 (holding Safelite's notice was untimely and in breach both under Discover's specific-notice provision and Zurich's unspecified prompt-notice provision). ACE does not dispute that a breach occurred. (ACE Mot., PageID 4056–57.) Thus, Discover and Zurich are entitled to a presumption that they were prejudiced by Safelite's unreasonably late notice. *Ferrando* at 945. ACE has the burden to show, by a preponderance of the evidence, that Discover and Zurich were not, in fact, prejudiced by Safelite's untimely notice. *See id.* at 937, 945.

"[T]he prejudice inquiry is a factual one." *Walls v. Amerisure Mut. Ins. Co.*, 343 F.3d 881, 887 (6th Cir. 2003) (applying Ohio law). Prejudice may be shown by the unavailability of witnesses, documents, or other evidence resulting from the delay. *Ormet*, 725 N.E.2d at 656. It can

also be demonstrated by the insurer's inability to protect their interests and to participate in negotiations to reduce costs. *Canton Drop Forge, Inc. v. Travelers Cas. & Sur. Co.*, 2021 WL 5895789, at *2 (6th Cir. Dec. 14, 2021) (applying Ohio law). "Prejudice has been described as seriously impairing the insurer's ability to investigate a claim." *McCruter v. Travelers Home & Marine Ins. Co.*, 168 N.E.3d 1, 16 (11th Dist. Ohio Ct. App. 2021) (internal quotation marks omitted).

ACE contends that Discover and Zurich were not prejudiced because "[n]o witnesses, documents, or other evidence became unavailable" between the start of the underlying lawsuit and Safelite's notice to Discover and Zurich. (ACE Mot., PageID 4058; *see* Kairis Decl., ECF No. 62-4, PageID 4069.) Additionally, ACE argues Discover and Zurich's interests were adequately protected by ACE's chosen defense counsel, Jones Day. (*Id.*)

### i. Results Achieved and Expenses Incurred

In the underlying litigation, Safelite obtained a judgment that the doctrine of laches barred Campfield from obtaining any damages for its claims that accrued prior to Campfield filing the underlying lawsuit, which occurred in August 2015. *Campfield*, 2021 WL 1215869, at *5; *see Campfield*, 91 F.4th at 409 (describing the holding on laches). Campfield did not appeal that decision. *Campfield*, 91 F.4th at 409. Following that decision, Zurich asserted it "does not have a continuing duty to defend or indemnity Safelite in the underlying *Campfield* litigation" because Zurich provided Safelite coverage starting in 2001 and ending in 2011, several years before Campfield's lawsuit was filed. (ECF No. 62-3, PageID 4065, 4067.) Likewise, Discover informed Safelite that "all damages sought against Safelite have been judicially determined to be manifestly outside the policy periods of the Discover Policies," which provided coverage to Safelite from 2010 to 2012. (ECF No. 63-2, PageID 4076.)

Accordingly, concerning both Discover and Zurich, the defense team hired by Safelite (and paid for by ACE) obtained very favorable results in the underlying litigation—Discover and Zurich both are not obligated to pay for any damages potentially owed by Safelite. Discover and Zurich nonetheless contend they were prejudiced by the untimely notice because they had no opportunity to investigate the facts, investigate coverage, pursue their own litigation strategies, and hire their preferred (and less expensive) defense counsel. (Discover Mot., PageID 4123–26; Zurich Mot., PageID 4096–97.) But most of these arguments are essentially ancillary to the results obtained by Safelite's defense counsel, and Discover and Zurich are unable to identify specific shortcomings in the factual investigation or the overall litigation strategy that might have led to a better result.

Initially, Jones Day's lawyers were charging Safelite rates "up to $875 per hour." (Stip. of Facts, PageID 163.) But when ACE started providing for Safelite's defense, "ACE and Safelite agreed that ACE's obligation to pay for the work performed by Jones Day would be limited to a blended rate of $450 per hour for all counsel." (*Id.*; *see* ECF No. 33-26, PageID 3631.) Discover's claims professional declares that, "[i]n 2016, the hourly rates being paid to Jones Day were 55% more expensive for partners and 91% more expensive for non-partners than panel counsel used by Discover" in similar cases. (ECF No. 67-1, PageID 4130.) But that assessment relies, at least in part, on the pre-tender rates Safelite paid to Jones Day rather than the lower, blended rate negotiated by ACE after tender—a negotiation that benefitted Discover and Zurich by lowering the overall defense costs incurred by Safelite. Furthermore, after Safelite tendered the defense to Discover and Zurich, both insurers agreed to pay one-third of Safelite's defense costs at the same blended rate of $450 per hour. (ECF No. 33-32, PageID 3676; ECF No. 33-33, PageID 3686.) Discover and Zurich do not present evidence that they sought to change that reimbursement rate after they agreed to it.

Furthermore, overarching all of Discover and Zurich's arguments is their stipulation that the $4,971,636.70 in pre-tender defense costs accrued by Safelite and paid for by ACE were "reasonable and necessary." (Stip. of Facts, PageID 164.) Even viewing the facts in a light most favorable to Discover and Zurich, this concession significantly undermines their arguments that Safelite's attorneys were paid unreasonably high rates, spent too many hours on the litigation, or incurred too many additional costs.

This Court therefore concludes that it is speculative and unfounded that Discover and Zurich would have provided for Safelite's defense with a different set of lawyers that would have achieved the same or better results with less expense. Given the above facts and arguments, ACE has rebutted the presumption of prejudice. Viewing the facts in the light most favorable to Discover and Zurich, no genuine issue of material fact remains, and a reasonable jury could only conclude that Discover and Zurich were not prejudiced by the untimely notice.

### ii. ACE's Conflict of Interest Argument

ACE additionally argues that, due to an apparent conflict of interest between Safelite and the insurers, Safelite, rather than the insurers, could choose what defense counsel would represent it in the underlying litigation. ACE argues that Discover and Zurich therefore were not prejudiced by not being involved in the selection of defense counsel or otherwise controlling Safelite's pre-tender defense. (ACE Mot., PageID 4059.) Ohio caselaw indicates that Safelite likely had a right to choose its own defense counsel and that the insurers were required to pay for that counsel pursuant to their duty to defend.

### 1. *Socony* and Subsequent Cases

In *Socony-Vacuum Oil Co. v. Cont'l Cas. Co.*, 59 N.E.2d 199, 204 (Ohio 1945), an insured party faced potential liability for a workplace injury that resulted from the insured's alleged

negligence. *Id.* at 200. The insurer initially provided for the insured's legal defense, exercising full control, for more than one year. *Id.* at 201. But the insurer then notified the insured about a conflict of interest between them and suggested that the insured may want to hire separate counsel for itself. *Id.* The insurer explained that it was in the insurer's interest that the factfinder determine that the specific tortfeasor was an employee of the insured (meaning the tort would not be covered by insurance), while it was in the insured's interest that the tortfeasor be a non-employee. *Id.* at 204–05. The insured responded by hiring their own counsel under protest and notified the insurer that the insurer must bear the expense, but the insurer refused to pay. *Id.* The Ohio Supreme Court held that due to the conflict, the insured was "entitled to recover reasonable attorney fees, and proper expenses on the ground that [the] insurer breached its contract" by refusing to pay for the insured's private counsel. *Id.* at 205. In short, the insurer had a duty to defend that extended, under the circumstances, to paying for the private counsel hired by the insured.

Interpreting and applying the holding in *Socony* and its progeny, the Ohio First District Court of Appeals held that "the authority must lie with the insured to insist upon the performance by the insurer of its contractual duty to defend, or, if that duty is refused *or compromised*, to carry the defense [on] its own behalf and seek reimbursement therefor." *Philip Stenger Sons, Inc. v. Fid. & Guar. Ins. Underwriters, Inc.*, No. 800544, 1981 WL 9948, at *6 (1st Dist. Ohio Ct. App. Aug. 12, 1981) (emphasis added) (describing how Ohio courts have applied the duty to defend where a conflict of interest exists). In another appellate court's view, "*Socony* holds that when an insurer's interests and those of its insured are mutually exclusive, the insurer must pay for counsel for the insured *as well as for its own counsel*," if the insurer hires separate counsel. *Red Head Brass, Inc. v. Buckeye Union Ins. Co.*, 735 N.E.2d 48, 55 (9th Dist. Ohio Ct. App. 1999).

### 2. Application of Conflict-of-Interest Law and the Duty to Defend

Here, when Safelite eventually tendered the defense to Discover and Zurich, the insurers acknowledged potential liability under their insurance contracts and agreed to provide for Safelite's defense. (ECF No. 33-32, PageID 3676; ECF No. 33-33, PageID 3684–85.) But, pursuant to a coverage exception included in their policies, Discover and Zurich expressly reserved the right to deny coverage if it was determined that Safelite knowingly violated Campfield's rights, among other reservations. (*Id.*) Accordingly, it was in Discover and Zurich's interests for a factfinder to conclude that Safelite knowingly committed the alleged violations, which would allow them to deny coverage on that claim, while it was in Safelite's interest for a factfinder to conclude that Safelite did not knowingly commit violations. This situation resembles the one in *Socony*, where the parties' interests diverged regarding how a specific element was determined.

This same conflict scenario played out with Safelite and ACE. Two months after Safelite notified ACE about the underlying litigation, ACE reserved its rights to disclaim coverage under the policy, explaining that it would not cover damages relating to the false advertising allegations against Safelite if Safelite acted "with knowledge of falsity." (ECF No. 33-25, PageID 3627.) In a second coverage letter to Safelite after Safelite met its deductible, ACE repeated the reservation of rights and explained that the plaintiff's allegations included that Safelite knew its statements were false. (ECF No. 33-26, PageID 3630.) ACE agreed that Safelite would continue with Safelite's chosen counsel and that ACE would pay for its defense costs. (*Id.*, PageID 3631.)

Presented with the same conflict situation after Safelite tendered the defense to Discover and Zurich, both insurers accepted the same arrangement, agreeing to reimburse Safelite for its post-tender defense costs with the defense provided by Safelite's chosen counsel at the same rates agreed by ACE. (ECF No. 33-32, PageID 3676; ECF No. 33-33, PageID 3686.) Therefore, the

Court finds it likely that, if Safelite had timely notified Discover and Zurich of the litigation, Discover and Zurich would have reserved its rights in the same way, and Safelite would have had the same opportunity to hire its chosen counsel due to the conflict. In that scenario, just like with ACE, and just like with Discover and Zurich post-tender, Discover and Zurich still would have had the obligation to pay for Safelite's chosen defense. As the court in *Red Head Brass* explained, Discover and Zurich could have hired their own counsel to represent their interests if they believed Safelite's chosen counsel was not adequate for that purpose. 735 N.E.2d at 55.

Discover and Zurich dispute ACE's conflict argument in part based on the Sixth Circuit's holding in a case where a potential conflict of interest arose between and insurer and an insured when the insurer reserved its rights, presenting potential conflicts of interest. *AMI Ent. Network, Inc. v. Zurich Am. Ins. Co.*, 526 F. App'x 635, 638 (6th Cir. 2013). Applying Michigan law, the Sixth Circuit held that the potential conflicts, which only arose after the insured tendered the defense to the insurer, "had no bearing on [the insurer's] liability for money" spent on the defense before the defense was tendered to it. *Id.* But this Court's task is to apply Ohio law based on what the Ohio Supreme Court would do when faced with this question. Given that the Ohio Supreme Court requires a prejudice inquiry to allow an insurer to deny coverage due to an insured's untimely notice, the court likely would find its holdings regarding conflicts of interest relevant to that inquiry.

Regardless, even if the Ohio Supreme Court would not engage in a conflict-of-interest analysis as part of the untimely notice prejudice inquiry under the facts of this case, ACE's other arguments, assessed above, are sufficient to rebut the presumption that Discover and Zurich were prejudiced by the untimely notice. No genuine issues of material fact remain that could persuade a reasonable jury otherwise.

### b.  Voluntary Payment Provisions: Breach and Prejudice

The Parties agree that Safelite breached the voluntary payment provisions of its contracts with Discover and Zurich. (Discover Mot., PageID 4110; Zurich Mot., PageID 4091; ACE Mot., PageID 4061.) Indeed, Safelite incurred costs in its defense before notifying Discover and Zurich about the underlying litigation, meaning Discover and Zurich could not consent to those payments. Even so, as this Court held above, the Ohio Supreme Court would apply a prejudice requirement before allowing an insurer to deny coverage of defense costs based on the insured's breach of a voluntary payment provision. And, given this Court's holding that the Ohio Supreme Court would extend the holding in *Ferrando* to cover voluntary payment provisions, it also likely would extend the presumption of prejudice to this situation.

ACE's arguments to rebut the presumption prejudice in this context are the same that it makes in the untimely notice context. (ACE Mot., PageID 4061–62.) This makes sense, given the close relationship between the two types of provisions, as explored above. Discover and Zurich decline to make independent arguments about prejudice in this context, holding to their position that no prejudice requirement applies. (*See* Discover Mot., PageID 4126–27; Zurich Mot., PageID 4097–98.)

ACE successfully rebuts the presumption of prejudice regarding Safelite's breach of the voluntary payment provisions for the same reasons it rebuts the presumption in the untimely notice context. The two types of provisions serve the shared purpose of allowing an insurer to "have a meaningful opportunity to investigate" and "to step in and control the potential litigation." *Ormet,* 725 N.E.2d at 655. Discover and Zurich stipulated that Safelite's pre-tender defense costs were "reasonable and necessary." (Stip. of Facts, PageID 164.) And just like with the untimely notice breach, it unlikely that Discover and Zurich would have provided for Safelite's defense with a

26

different set of lawyers that would have achieved the same or better results with less expense. Discover and Zurich benefitted from the work of Safelite's chosen defense counsel, which resulted in a holding that Discover and Zurich would not be liable to cover any damages under their policies with Safelite. And Safelite achieved these results with attorneys paid at a negotiated, blended hourly rate later agreed to by Discover and Zurich after tender. Viewing these facts in the light most favorable to Discover and Zurich, a reasonable jury could only find that they were not prejudiced by the breach.

Accordingly, this Court concludes that, under Ohio law, Discover and Zurich were not prejudiced by Safelite's breach of the voluntary payment provisions or its breach of the untimely notice provisions of their insurance contracts. Therefore, under Ohio equitable contribution law, Discover and Zurich share a duty with ACE to defend Safelite, including Safelite's pre-tender defense costs. Discover and Zurich received the benefit of the $4,971,636.70 in Safelite's pre-tender defense costs paid by ACE. Applying "the doctrine of contribution liberally, since it is based on broad principles of equity," *Resco Holdings*, 112 N.E.3d at 508, Discover and Zurich thus owe ACE equitable contribution for their share of those costs.

## CONCLUSION

In sum, this Court concludes that, under Ohio law, the Ohio Supreme Court would extend the holding of *Ferrando* to the breach of a voluntary payment provision, requiring a showing of prejudice before allowing an insurer to deny coverage of pre-tender defense costs, at least where there is also a breach of a notice provision. This Court further concludes that, under Ohio law, Discover and Zurich were not prejudiced by Safelite's breach of the notice provisions nor by its breach of the voluntary payment provisions in its insurance contracts with Discover and Zurich.

Accordingly, the Court **GRANTS** ACE's Motion for Summary Judgment (ECF No. 62),

**DENIES** Discover's Cross-Motion for Summary Judgment (ECF No. 67), and **DENIES** Zurich's

Cross-Motion for Summary Judgment (ECF No. 66). ACE is entitled to a one-third payment of

**$1,657,212.23** each from Discover and Zurich.

The Clerk is **DIRECTED** to enter judgment and terminate this case on the Court's docket.

**IT IS SO ORDERED.**

**2/24/2025**                                  **s/Edmund A. Sargus, Jr.**
**DATE**                                          **EDMUND A. SARGUS, JR.**
                                                         **UNITED STATES DISTRICT JUDGE**